CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

| | |
|---|---|
| In the Matter of the Application of<br><br>HOWARD ROBINSON,<br><br>　　　　　　　　　　　　Petitioner,<br><br>FOR A JUDGMENT PURSUANT TO ARTICLE 78 OF THE CPLR<br><br>　　　　　　-against-<br><br>FORDHAM UNIVERSITY,<br><br>　　　　　　　　　　　　Respondent. | Index No.: _____/2021<br>RJI No. _____<br><br><br>**VERIFIED PETITION** |

Petitioner Howard Robinson respectfully alleges, on personal knowledge and upon information and belief, the following:

1.　　Petitioner Howard Robinson brings this special proceeding against Respondent Fordham University ("Fordham") pursuant to Article 78 of the CPLR asking this Court to vacate Fordham's decision finding him responsible for sexual misconduct and then firing him.

2.　　In a virtual classroom setting, Petitioner – a university professor – was typing an email to his students concerning the day's course materials when, due to a medical condition that makes bladder control difficult, Petitioner had an extreme urge to go to the bathroom. Unbeknownst to Petitioner, one student did not enter a virtual "breakout room" with the rest of the class, and observed Petitioner grimacing and shifting his weight in his seat as he rushed to complete the message to his class before relieving himself. The student erroneously believed Petitioner – who was only visible from the chest up – to be masturbating, video-recorded him, and reported him to Fordham's administration.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 09/17/2021

Case 7:21-cv-07909-NSR   Document 31-2   Filed 11/05/21   Page 2 of 15

Fordham then fired Petitioner without even following its own policies or existing law requiring certain procedural protections in the adjudication of such complaints. Fordham did so in defiance of the plain evidence and the law.

3. By adjudicating the claim against Petitioner in a manner that violated its own policies, ignoring exculpatory evidence, and expressing contempt for its legal obligations, Fordham reached a decision that was arbitrary and capricious.

4. Fordham also denied Petitioner a hearing as required by law under Title IX of the Education Amendments of 1972, and therefore failed to perform a duty enjoined upon it by law in its haste to condemn Petitioner as guilty of sexual misconduct and throw him out of his job.

5. As a result of Fordham's violation of its own policies and the law, Petitioner lost his livelihood and his reputation because of a medical condition beyond his control.

I. **PARTIES**

6. Petitioner Howard Robinson is a resident of Somers, New York.

7. Respondent Fordham University is a university with a principal place of business in the Borough of the Bronx, New York, New York.

II. **FACTS**

8. At all relevant times, Petitioner was an Associate Clinical Professor at Fordham's Graduate School of Social Service.

9. Petitioner is a Licensed Clinical Social Worker and a mental health provider in New York. He has also been a full-time faculty member at Fordham since 1995.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1                                                    INDEX NO. UNASSIGNED
                                                                     RECEIVED NYSCEF: 09/17/2021

Case 7:21-cv-07909-NSR   Document 31-2   Filed 11/05/21   Page 3 of 15

### A. The September 2020 Allegations

10. In the Fall 2020 semester, Petitioner taught a course entitled "Integrating Human Rights and Social Justice in Practice." Because of the ongoing Covid-19 pandemic, Petitioner taught this course via Zoom.

11. Approximately 20 students were enrolled in Petitioner's course.

12. Towards the end of class on September 10, 2020, Petitioner placed his students randomly into four separate Zoom "breakout rooms" to discuss two case studies that the students had been assigned to review. Students received prompts to join their assigned breakout room and had to click the prompt to join.

13. Unbeknownst to Plaintiff, one student in the class – Jane Doe – did not go into a breakout room.

14. Upon information and belief, this happened because Doe was feeling ill that day and was only watching the class intermittently, and she chose not to click the button that would have placed her in a breakout room.

15. While students were in the breakout rooms, Petitioner attempted to send a PowerPoint of the day's presentation to the class via email.

16. While he was trying to send out the PowerPoint presentation, Petitioner was experiencing a strong urge to urinate. Petitioner suffers from an enlarged prostate that results in a powerful, uncomfortable urge to urinate due to the pressure placed on the bladder by the enlarged prostate. Ironically, given the baseless charges against him, Petitioner also suffers from both erectile dysfunction and low testosterone levels, which make it virtually impossible for him to get an erection or to masturbate, as was plainly known to Fordham throughout the process.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

17. Petitioner did not want to get up to urinate prior to sending the PowerPoint out to his students. As a result, Petitioner was shaking his legs, grimacing, and experiencing labored breathing while preparing the email.

18. Petitioner's hands were not visible on camera, but he could be heard audibly typing on his keyboard and tapping his mousepad, sounds consistent with Petitioner drafting an email but inconsistent with the accusation that he was masturbating.

19. Petitioner, who is 68 years old and easily frustrated by technology, was having difficulty attaching the PowerPoint to the email and inputting all his students' names and email addresses. This difficulty was exacerbated by his painful urge to urinate. Even without the urge to urinate, Petitioner suffers from a tremor, which makes typing challenging even under the best of circumstances.

20. Under the pressure of the situation, Petitioner accidentally sent the email only to himself. This did not change, however, the fact that he was typing and sending an email containing a set of PowerPoint slides at the time he was allegedly masturbating, regardless of who the email was sent to. Affirmative evidence undeniably demonstrated that this was true: video and audio plainly showed petitioner typing. By contrast, no "evidence" showed "masturbation"— other than Jane Doe's surmise.

21. After sending the email, Petitioner quickly got up and went to the bathroom.

22. Jane Doe, who unbeknownst to Petitioner was not in a breakout room, witnessed Petitioner's bodily movements (from the chest up) on Zoom and believed that he was masturbating. She used her iPhone to record Petitioner's conduct.

23. The following day, September 11, 2020, Doe made an informal report to Fordham alleging that Petitioner masturbated in front of her in class on September 10.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

24. On September 13, 2020, Fordham notified Petitioner that he was facing unspecified allegations of sexual misconduct and that he was being suspended without pay, a clear indication that he was judged guilty from the start. Fordham also immediately barred Petitioner from campus and blocked his access to his university email.

25. On September 18, 2020, Jane Doe followed up with a formal sexual misconduct complaint against Petitioner.

### B. Fordham Ignores Federal Title IX Regulations and Denies Petitioner a Hearing

26. As Fordham clearly knows, an allegation that a professor masturbated in front of a student in class is governed by Title IX of the Education Amendments of 1972, which prohibits sex discrimination – including sexual harassment and assault – in educational programs and activities receiving federal funds.

27. Fordham is a recipient of federal funds and is subject to the requirements of Title IX and its implementing regulations.

28. In May 2020, the U.S. Department of Education promulgated new Title IX regulations that require universities to provide respondents in university Title IX proceedings with important procedural protections, including the right to a live hearing with cross-examination.

29. Following the passage of the new Title IX regulations, desiring to escape the requirement to provide procedural protections to the accused, many universities rushed to implement bifurcated sexual misconduct policies. A bifurcated policy enables universities, as they view the matter, to switch off procedural protections whenever possible for alleged sexual misconduct that falls outside Title IX – such as conduct that occurs off-campus or is mild enough to violate university regulations but does not rise to the level of a Title IX violation.

30. Fordham has a bifurcated sexual misconduct policy:

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.
5 of 15

1. For sexual misconduct allegations falling under Title IX, parties must receive a live hearing at which they can make opening statements and have an advisor of their choice ask questions of the opposing party or witnesses (here, Jane Doe).

2. For sexual misconduct allegations falling outside of Title IX, there is no hearing. Instead, "the Title IX Coordinator, or their designee, will make a finding of the facts and make a recommendation for resolution to either the area Vice President, or their designee, or the appropriate decision-maker."

31. To avoid the procedural requirements of the Title IX regulations, Fordham erroneously held that Petitioner's conduct did not fall within the scope of Title IX. This is patently absurd: There can be no dispute that a professor masturbating in front of a student in class would be severe sexual harassment that falls within the scope of Title IX, and would thus require the due process protections prescribed by the May 2020 Title IX regulations.

32. Instead, however, Fordham held that under the May 2020 Title IX regulations, a single instance of sexual harassment (as opposed to physical sexual assault) cannot be adjudicated under Title IX "no matter how egregious the conduct being alleged." This was and is clearly contrary to law.

33. This <u>directly contradicts</u> the May 2020 regulations, which explicitly provide that "a single instance of sufficiently severe harassment on the basis of sex may have the systemic effect of denying the victim equal access to an education program or activity."

34. If true, the allegation that Petitioner masturbated in front of a student **in class** would constitute severe sexual harassment that denied the student equal access to an education program or activity.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

35. Fordham's rush to judgment and drastic response to the complainant's allegation – immediately suspending Petitioner without pay, barring him from the classroom, banning him from campus, and blocking his email access prior to even conducting an investigation – demonstrates that they did, in fact, consider the allegations to be severe.

36. Nevertheless, Fordham remained determined to deny Petitioner the procedural protections guaranteed by the new Title IX regulations even when Petitioner presented the university with the language of the regulations clearly indicating that the allegations did fall within the scope of Title IX and that he was, in fact, entitled to the full procedural protections of the law.

37. Fordham resolved to ignore the law.

38. As a result of Fordham's decision, instead of a hearing with the opportunity to present his case and ask questions of the parties and witnesses, Petitioner's case was adjudicated using an "investigative model" where a single investigator gathers evidence and produces an investigative report that a decisionmaker then uses to decide the case without ever hearing from the parties themselves.

**C.  Fordham Conducts a Fatally Flawed Investigation**

39. After denying Petitioner the live hearing to which he was entitled under Title IX, Fordham conducted a flawed, results-driven investigation shot through with additional violations of its own policies, leading to a determination that was arbitrary and capricious.

40. Fordham's investigator first interviewed Petitioner on October 6, 2020. Petitioner was not shown, or even informed of the existence of, video evidence prior to his interview. As a result, Petitioner had no idea why a student had accused him of masturbation. Experiencing a powerful, painful urge to urinate is common for Petitioner, so he did not recall anything unusual about September 10, 2020, nor did he have any idea that the complainant had recorded him

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

experiencing this discomfort, nor did he have any idea how he appeared while experiencing the discomfort.

41. The fact that he did not recall anything unusual about that day, which had passed almost a month earlier, combined with the fact that he teaches more than one section of the same class, made it difficult for Petitioner to even recall the finer details of what happened in class that day.

42. Petitioner did, however, inform the investigator that he does not masturbate *at all* due to his medical conditions. Petitioner suffers from low testosterone, erectile dysfunction, and other medical conditions such as depression that limit both his libido and his ability to get an erection. Yet Fordham ignored all this medical evidence in its rush to judgment.

43. Fordham interviewed Petitioner for a second time on October 26, 2020. This time, they finally allowed him to view the video evidence prior to his interview. While Petitioner is only visible from the chest up, the video shows him moving in his seat while grimacing and breathing heavily, consistent with the pain he was experiencing while trying to hold back urine— as a consequence of his medical condition.

44. After viewing the video evidence, Petitioner explained truthfully what was captured on the video and how this was caused by his medical condition – namely, an enlarged prostate that creates a frequent, powerful urge to urinate.

45. Petitioner explained that when attempting to delay a trip to the bathroom, he jiggles his legs and moves around in an effort to relieve the pressure, and that the discomfort can cause labored breathing. He also explained that he suffers from a tremor that, while benign, impacts both his bodily movements and his ability to accomplish tasks on the computer requiring fine motor control, such as the typing that is plainly audible on the recording.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

46. Following his second interview, Petitioner provided medical records to substantiate his testimony that (a) he suffers from a medical condition that results in a frequent, painful urge to urinate; (b) he suffers from a tremor; and (c) he was not capable of masturbation due to his erectile dysfunction and low testosterone levels. But Fordham preferred to make its decision in an evidence-free zone, in addition to denying Petitioner procedural protections and ignoring its own policies.

47. This too was a clear violation of Fordham's policies. Fordham's Sexual and Related Misconduct Policy provides that investigations will be conducted by "trained, qualified investigators." Fordham's investigator, Kareem Peat, has an undergraduate degree in political science and graduate degrees in law and education. None of Peat's training qualifies him to evaluate medical evidence.

48. Based on Peat's recommendation, Fordham's decisionmaker Jonathan Crystal – who also has no medical background or training – erroneously concluded that Petitioner's "medical conditions did not provide a credible explanation for the conduct observed on Zoom."

49. Moreover, Fordham's investigation was haphazard and sloppy at best. Peat only contacted three of the 19 students (excluding the complainant) who were enrolled in Petitioner's class – the first three students on the list in alphabetical order.

50. Of those students, only two provided relevant testimony, because one was not even in class that day. Thus one supposed witness did not have anything to say.

51. One supposed piece of "evidence" that Fordham emphasized heavily in its decision to deprive Petitioner of his livelihood was that one of those two students testified that Petitioner did not join her breakout room because he could not figure out how. The other student didn't recall Petitioner joining his breakout room but said that "he can't say for certain." Petitioner believed that

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 09/17/2021

Case 7:21-cv-07909-NSR   Document 31-2   Filed 11/05/21   Page 10 of 15

he had visited the students' breakout rooms based on the fact that he visits breakout rooms in the normal course of class teaching, and he did not remember anything remarkable about his class which, by this time, had occurred over a month ago.

52. The remaining 16 students in Petitioner's class were never contacted or interviewed.

53. Nonetheless, Fordham concluded based on the testimony of two students – one of whom was not even certain whether Petitioner had visited his breakout room or not – that Petitioner had not joined students' breakout rooms, was therefore somehow lying, and that this was one of the "most significant" findings pointing towards Petitioner's guilt.

54. Fordham tucked this conclusion into an investigative report that Petitioner was never permitted to see, let alone respond to or refute. And following submission of this secret report, decisionmaker Jonathan Crystal recommended that Petitioner be terminated.

**D. Petitioner's Appeal**

55. Fordham proceeded to ensure that petitioner got no chance to confront the "evidence" against him. Fordham does not allow respondents to appeal the university's decision on substantive grounds. Rather, appeals are only permitted based on (1) procedural irregularities; (2) severity of sanction; (3) new evidence; and (4) investigator or decisionmaker bias.

56. Since Petitioner was not permitted to see the investigative report prior to his termination (despite explicitly requesting to), he could never challenge the investigator's factual findings or conclusions prior to the decision against him. Fordham's unfair proceedings completely blocked Petitioner's right to confront the evidence against him.

57. Although Petitioner did file an appeal, he was hamstrung by the narrow grounds for appeal under Fordham's policy. Petitioner was never able to argue, either before or after the university's decision, that the findings against him were not based on substantial evidence.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1                                                                        RECEIVED NYSCEF: 09/17/2021

Case 7:21-cv-07909-NSR   Document 31-2   Filed 11/05/21   Page 11 of 15

58. On appeal, Petitioner argued that Fordham committed procedural error by miscategorizing the allegation against him as outside the scope of Title IX.

59. In defiance of the plain language of the regulations, the appeals panel again found that "single acts, no matter how severe, unless the single act involved either an explicit *quid pro quo*, or physical violence" could not fall under Title IX.

60. In reality, the regulations, which Fordham was undeniably bound to follow, clearly state that "a single instance of sufficiently severe harassment on the basis of sex may have the systemic effect of denying the victim equal access to an education program or activity." In fact, the law is clear that public masturbation class is one such instance of sufficiently severe sexual harassment. This is not just the law; it is also common sense.

61. Petitioner further argued that Fordham committed procedural error by failing to provide "trained, qualified investigators" to assess the medical evidence in his case before concluding that his "medical conditions did not provide a credible explanation for the conduct observed on Zoom."

62. The appeals panel arbitrarily rejected this argument as well, and affirmed the decisionmaker's findings.

63. In response to Petitioner's appeal, Fordham's decisionmaker Jonathan Crystal stated that that "although Mr. Robinson seems to be having a difficult time accepting the consequences of his actions, the panel should disregard this attempt to appear sympathetic." Nothing better exemplifies Fordham's determination to ignore all exculpatory evidence, ignore its own rules, and defy the law of Title IX so that it could arbitrarily and cruelly punish a faculty member who had dedicated decades of his life in service to the University.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

64. As a result of this fatally flawed proceeding that trampled not only fundamental fairness but Fordham's own policies and the law, Petitioner has lost his livelihood as well as his reputation.

## FIRST CAUSE OF ACTION

### (Fordham Failed to Perform a Duty Enjoined on it by Law By Denying Petitioner a Hearing Under Title IX)

65. Petitioner repeats and realleges every allegation above as if set forth in full herein.

66. The May 2020 Title IX regulations, 34 C.F.R. 106, require that respondents in campus Title IX cases receive a live hearing with cross-examination, as well as the opportunity to review and respond to an investigative report.

67. The regulations define sexual harassment for Title IX purposes as conduct "so severe, pervasive, and objectively offensive that it denies a person equal educational access." 34 C.F.R. § 106.30.

68. The regulations recognize that "a single instance of sufficiently severe harassment on the basis of sex may have the systemic effect of denying the victim equal access to an education program or activity" and are therefore subject to Title IX. 85 Fed. Reg. 30036.

69. If true, the allegation that Petitioner masturbated in front of a student in class would constitute severe sexual harassment, as a matter of law, that denied the student equal access to an education program or activity.

70. Fordham's immediate, draconian response to the student's bare accusation also demonstrates that the university considered the alleged conduct to be sufficiently severe to trigger Title IX.. Prior to conducting any investigation, Fordham, presuming Petitioner guilty from the start,

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

suspended him without pay, barred him from teaching or even setting foot on campus, and revoked his email access.

71. Despite treating Petitioner as some sort of criminal for doing nothing more than having to go to the bathroom, Fordham – in order to avoid providing Petitioner with a hearing and other procedural protections – willfully and arbitrarily construed the allegation as outside the scope of Title IX.

72. Petitioner was irreparably prejudiced by this willful and knowing disregard of the law and Fordham's own rules. He was given no opportunity to review the investigative report prior to his termination, no hearing at which to have a decisionmaker evaluate his credibility in person, and no opportunity to confront his accuser or any witnesses. This significantly impaired his ability to defend himself against the complainant's wrongful allegation.

73. For the reasons set forth above, Fordham's decision finding Petitioner responsible for sexual misconduct should be vacated and Petitioner should be reinstated.

## SECOND CAUSE OF ACTION

**(Fordham's Determination was Arbitrary and Capricious)**

74. Petitioner repeats and realleges every allegation above as if set forth in full herein.

75. The only evidence that Petitioner masturbated was the complainant's subjective perception of a video that showed Petitioner from the chest up and fully clothed. It is undisputed that no evidence, video or otherwise, demonstrates that he was masturbating other than the say-so of the accusing student and the subjective opinion of Fordham's unqualified investigator and its unqualified decision maker.

76. By contrast, Petitioner submitted a wealth of medical evidence regarding his medical conditions that caused the painful urge to urinate and that make masturbation impossible for him.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

77. Despite a policy promising "trained, qualified investigators," Petitioner's medical records were never reviewed by anyone with medical knowledge or expertise.

78. Instead, an individual with a political science degree found that Petitioner's "medical conditions did not provide a credible explanation for the conduct observed on Zoom," a determination he was not qualified to make.

79. This was no trivial matter. Despite the fact that Investigator Peat lacked any qualifications to make that finding, the decisionmaker, equally unqualified, found this was one of the "most significant findings" pointing to Petitioner's guilt.

80. Fordham's failure to conduct a thorough investigation, and to ensure that the medical evidence was reviewed by someone competent to review it, violates Fordham's own policies promising a "thorough investigation" and "trained, qualified investigators." Accordingly, for the reasons set forth above, Fordham's decision finding Petitioner responsible for sexual misconduct should be vacated and Petitioner should be reinstated.

**Requested Relief**

Petitioner respectfully requests that this Court issue an order:

i. Vacating Fordham's decision finding him responsible for sexual misconduct; and

ii. Ordering Petitioner's reinstatement to his faculty position;

iii. Ordering payment of the salary withheld from Petitioner as a result of Fordham's arbitrary, capricious, and unlawful determination;

iv. Ordering such other and further relief that the Court deems just and proper.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 09/17/2021

Case 7:21-cv-07909-NSR   Document 31-2   Filed 11/05/21   Page 15 of 15

Respectfully Submitted,

*[signature: Michael T. Allen]*

Michael Thad Allen, Esq.
(Reg. No. 5358726)
ALLEN HARRIS PLLC
PO Box 404
Quaker Hill, CT 06375
Tel: (860) 345-5310, Ex. 102
mallen@allenharrislaw.com

Samantha K. Harris
*Pro Hac Vice Admission Pending*
ALLEN HARRIS PLLC
PO Box 673
Narberth, PA 19072
Tel: (860) 345-5310, Ex. 101
sharris@allenharrislaw.com

For PLAINTIFF/PETITIONER

## VERIFICATION

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF ~~BRONX~~ Westchester )

John Doe, being duly sworn, deposes and says:

I am the petitioner in this proceeding.

I have read the above petition and hereby state that it is true to the best of my knowledge and experience, and as to those matters alleged to be on information and belief, I believe them to be true.

*[signature]*
Howard Robinson

Sworn to before me this
16th day of September 2021

*[signature]*
Notary Public

MATTHEW F MESNICK
Notary Public - State of New York
NO. 01ME6395247
Qualified in Dutchess County
My Commission Expires Jul 22, 2023

15

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.