USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/28/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREA MORIN**,**

         Plaintiff,

 -against-

FORDHAM UNIVERSITY; HOWARD ROBINSON; and MARY ANN FORGEY,

         Defendants.

No. 21 Civ. 7909 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

  Plaintiff Andrea Morin ("Plaintiff") commences this action against Defendants Fordham University ("Defendant Fordham University" or "Defendant University"), Howard Robinson ("Defendant Robinson"), and Mary Ann Forgey ("Defendant Forgey") (collectively, "Defendants"), alleging (1) sexual harassment and retaliation in violation of the Education Amendments of 1972, 20 U.S.C. Section 1681 ("Title IX"); (2) hostile educational environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, et seq. ("Title VII"); and (3) intentional infliction of emotional distress under New York state law. (Complaint, "Compl.," ECF No. 8.)

  Presently before the Court are Defendants' motions to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). For the following reasons, the motions are GRANTED in part and DENIED in part.

## BACKGROUND

  This action arises from (1) an alleged Zoom session wherein Defendant Robinson, then an instructor at Defendant Fordham University, masturbated during class on September 10, 2020

("the incident") (Compl. ¶¶ 20 – 27); and (2) a failing grade by Defendant Forgey during the same semester and Plaintiff's subsequent grade appeal process (Compl. ¶¶ 39 – 67). The allegations in the Complaint are deemed true for purpose of resolving this motion.

### A. The Incident

Plaintiff first enrolled at Defendant University's College of Liberal Studies in Spring 2007. (Compl. ¶ 10.) She left the school in Fall 2007 after achieving a GPA of 2.93. (Compl. ¶ 10.) In Fall 2019, Plaintiff returned to Defendant University and enrolled in the Fordham College of Continuing and Professional Studies. (Compl. ¶ 11.) In Spring 2020, Plaintiff was accepted into the Bachelor of Arts program in Defendant University's School of Social Work ("BASW"). (*Id.*) The completion of the BASW program requires a total of 124 credits. (Compl. ¶ 12.) Plaintiff maintains that she had earned a total of 121.5 credits prior to this action. (*Id.*)

In Fall 2020, Plaintiff enrolled in Defendant Robinson's course, "SOWK 6040," titled "Integrating Human Rights and Justice in Practice" (hereinafter "HRJ course"). (Compl. ¶¶ 15, 17.) Plaintiff also enrolled in Defendant Forgey's course, "SOWK 6323," titled "Social Work Practice with Individuals Across the Lifespan" (hereinafter "SWL course"). (Compl. ¶ 16.) Both courses were conducted by Zoom video conferencing in the fall 2020 semester. (Compl. ¶¶ 15-18.)

On September 10, 2020, the day of the alleged incident, Plaintiff attended Defendant Robinson's HRJ course via Zoom. (Compl. ¶¶ 20-21.) She informed Defendant Robinson at the beginning of the class session that she was not well but would still participate in the class with her Zoom camera off. (*Id.*) During the class session, every student, except Plaintiff, went into a breakout room as directed by Defendant Robinson. (Compl. ¶ 22.) Plaintiff alone remained in the main Zoom session. (Compl. ¶ 23.) During this period, Plaintiff temporarily went away from her

screen until she heard "noises of a sexual nature in the voice of Defendant Robinson." (Compl. ¶ 23.) She turned back and saw "Defendant Robinson masturbating on the video." (Compl. ¶ 24.) According to Plaintiff, she observed Defendant Robinson "from above his waist . . . for a period of 1.5 minutes, during which time he was shaking, breathing hard, and saying 'oh fuck yeah.'" (Compl. ¶ 24.)

Plaintiff recorded the event on her screen with her cellphone. (Compl. ¶ 25.) While Plaintiff was recording, Defendant Robinson walked away from screen before coming back and said: "Andrea, are you still there?" (Compl. ¶ 26.) Defendant Robinson then removed Plaintiff from the Zoom video conference. (Compl. ¶ 27.)

Immediately following the incident, Plaintiff reached out to Defendant University's Counseling and Psychological Services (CPS) office to seek advice on reporting the incident. (Compl. ¶ 28.) The CPS office responded on the same day, advising that: (1) "there was no mechanism for reporting the incident other than going through the Dean" (Compl. ¶ 29a); and (2) "however, I do want to warn you that there will be negative consequences to you from the university if you tell" (Compl. ¶ 29b).

Plaintiff's next class following the incident was Defendant Forgey's SWL course. (Compl. ¶ 30.) Plaintiff informed Defendant Forgey that she was unwell and unable to attend the SWL class on that day. (Compl. ¶¶ 30-31.)

Plaintiff then contacted Steve Albanese ("Albanese"), Associate Dean of Defendant Fordham University's School of Professional and Continuing Studies about the incident. (Compl. ¶ 32.) At Albanese's request, Plaintiff sent Albanese an email with full details and the video of the incident. (Compl. ¶ 33.)

On September 11, 2020, Defendant Fordham University's employee, Kareem Peat "from Title IX [sic]" ("Peat") first communicated with Plaintiff via email about the incident. (Compl. ¶ 34.) Peat subsequently met with Plaintiff via Zoom on September 14, 2020 and informed Plaintiff that "a Title IX investigation[1] could be conducted as to Defendant Robinson, if requested." (Compl. ¶ 36.)

On September 12, 2020, Defendant Robinson emailed Plaintiff that he was "thinking about her" and asked "how she was feeling." (Compl. ¶ 35.) On September 14, 2020, Plaintiff was informed that Defendant Robinson "was placed on leave by his union with a no contact directive" and was suspended by Defendant University without pay. (Compl. ¶ 37.) On September 18, 2020, Plaintiff signed a "Title IX complaint"[2] against Defendant Robinson for violating Defendant University's prohibition against "Sexual Exploitation and Other Sexual Misconduct-Sexual Exhibitionism." (Compl. ¶ 38.)

On October 5, 2020, Peat interviewed Defendant Robinson regarding the incident. (Compl. ¶ 42.) According to Plaintiff, Defendant Robinson (1) denied all allegations; (2) "described the allegations as retaliatory against him"; (3) "told the investigator that Plaintiff's complaint was 'out of reality' and psychotic"; (4) "told the investigator that he 'didn't have time' to do what Plaintiff alleged because he was supervising the breakout rooms and emailing the PowerPoint to the students"; and (5) "stated he has erectile dysfunction and couldn't have been masturbating." (Compl. ¶ 44.)

---

[1] Defendant Fordham University avers that Plaintiff mischaracterizes Defendant University's investigation of Defendant Robinson as a "Title IX" investigation, because Defendant University had determined that Plaintiff's "claim did not meet the new standard of review set forth by the United States Department of Education." (Defendant University Mem. at 8-10, ECF No. 53.) It can be inferred from the Complaint that this distinction was not clearly conveyed to Plaintiff at the time of investigation. Therefore, for purpose of resolving the instant motion, the Court accepts Plaintiff's characterization of the investigation as a Title IX investigation.

[2] *See supra* n.1.

According to Plaintiff, Defendant Robinson was unaware that the incident was recorded until after the October 5, 2020 interview. (Compl. ¶¶ 43, 45.) On October 26, 2020, Defendant Robinson viewed the incident recording during a second Title IX interview. (Compl. ¶ 48.) After viewing the recording, Defendant Robinson provided that (1) his behavior in the video was caused by "a very strong urge to urinate"; (2) he erroneously described the timeline of the incident during the previous interview. (Compl. ¶ 48.) Peat proceeded to interview other professors and students. (Compl. ¶ 49.)

On December 23, 2020, Defendant University's investigation of the incident concluded. (Compl. ¶ 50.) On January 26, 2021, Plaintiff was informed that Defendant Robinson had been terminated from Defendant University as a result of the investigation. (Compl. ¶ 53.)

**B. Grade of "F" by Defendant Forgey**

Plaintiff was enrolled in three courses during the fall 2020 semester: (1) Defendant Robinson's HRJ course[3]; (2) Defendant Forgey's SWL course; and (3) Statistic I. (Compl. ¶ 40.) After the incident, Albanese and other Defendant University's employees sought time extension on behalf of Plaintiff from these courses' instructors for Plaintiff to complete the coursework. (Compl. ¶ 39.) The extension was granted as to the HRJ course, in which Plaintiff eventually received a B+, and Statistic I, in which Plaintiff eventually received a B. (Compl. ¶ 57.) Defendant Forgey rejected the time extension request and required Plaintiff to complete the SWL course work before the Spring 2021 semester. (Compl. ¶ 41.)

On October 20, 2020, Defendant University's Title IX office interviewed Defendant Forgey regarding the incident. (Compl. ¶ 46.) During the interview, Defendant Forgey provided that (1) she knew Plaintiff as a student in her Zoom class and never met Plaintiff in person; (2)

---

[3] A different instructor replaced Defendant Robinson after the incident. (Compl. ¶ 15.)

5

Plaintiff was present at least at the beginning of her September Zoom class; (3) she received an email from Plaintiff requesting permission to leave the camera off due to health issues; (4) she received Plaintiff's request for accommodations in her class and would describe Plaintiff as "obviously challenged" by an unspecified incident; and (5) she was not aware that Defendant Robinson was the subject of the Title IX investigation. (Compl. ¶¶ 46-47.) Defendant Forgey and Defendant Robinson were long-term colleague on the full-time faculty of Defendant University. (Compl. ¶ 54.) Plaintiff asserts that Defendant Robinson and Defendant Forgey were co-contributors to at least one book as of Fall 2020. (Compl. ¶ 55.) Plaintiff avers that Defendant Forgey was a friend of Defendant Robinson. (Compl. ¶ 56.)

On January 13, 2021, Plaintiff received a failing grade of "F" for Defendant Forgey's SWL course. (Compl. ¶ 52.) Plaintiff avers that Defendant Forgey failed her "without any in-course counseling, warning, or chance to remedy any purported deficiencies in her work" and "refused to discuss Plaintiff's coursework after failing her." (*Id*.) Plaintiff maintains that this F-grade was "the only grade below [a grade of B] Plaintiff received while in attendance at Defendant University from spring forward." (Compl. ¶ 58.) Due to this F grade, Plaintiff (1) lost her New York State Access-VR program scholarship; (2) was unable to complete the undergraduate degree program in May 2021; (3) was denied advanced placement into the second year of the Master of Social Work Program at Defendant University in fall 2021; and (4) was unable to receive a pay increase at work due to delay in graduation. (Compl. ¶ 60.)

Plaintiff appealed the F-grade to no avail. (Compl. ¶ 61.) Plaintiff avers that, in February 2021 and during the appeal process, she was told by two Defendant University employees, Debra McPhee ("McPhee") and Linda White-Ryan ("White-Ryan"), that "Plaintiff's complaints about [Defendant Robinson] and [Defendant Forgey] constituted Plaintiff making a negative assessment

6

of Fordham University as an institution." (Compl. ¶ 62.)  Plaintiff alleges that McPhee and White-Ryan falsely told her that Defendant Forgey's SWL course was not available during the summer 2021 session, though in fact the course was offered. (Compl. ¶¶ 65-66.)  McPhee and White-Ryan further told Plaintiff that "'they decided' to allow Plaintiff to take the 'Part Two' of [the SWL course] in the Spring 2021 session and 'hope for the best'." (Compl. ¶ 63.)  Plaintiff took part two of the SWL course during the spring 2021 semester and received a grade of "B-". (Compl. ¶ 64.)  Plaintiff also alleges that, in January 2021, White-Ryan stated, during an interview with the Title IX office, that "Plaintiff's complaint about Defendant Forgey caused [White-Ryan] to have 'grave concerns' about Plaintiff's fitness to be a social worker because [White-Ryan] considered Plaintiff to be blaming someone else instead of being accountable for herself." (Compl. ¶ 67.)

### C. Procedural History

Plaintiff commenced the instant action on or about September 22, 2021. (ECF Nos. 1, 8.)  By order dated November 22, 2021, this Court waived pre-motion conference for all Defendants and directed all Defendants to file a joint motion to dismiss. (ECF No. 40.)  On November 24, 2021, Defendant Fordham University and Defendant Forgey submitted a joint letter requesting leave to file a separate motion to dismiss from that of Defendant Robinson. (ECF No. 41.)  By same-day memorandum endorsement, this Court granted this application and directed Defendant Fordham University and Defendant Forgey to serve and file a collective motion to dismiss, whereas Defendant Robinson was to serve and file a separate, individual motion to dismiss. (ECF No. 42.)  The parties filed their respective briefing papers as follows: Plaintiff's opposition was filed on January 21, 2022 (ECF No. 45); Defendants Fordham University and Forgey their collective motion to dismiss and reply on February 4, 2022 (ECF Nos. 51-54); and Defendant Robinson's individual motion to dismiss and reply on February 4, 2022 (ECF Nos. 48-50).

**LEGAL STANDARD**

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.  Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

In meeting this plausibility standard, the plaintiff must demonstrate more than a "sheer possibility" of unlawful action; pleading facts that are "'merely consistent with' a defendant's liability ... 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955); *see also Reddington v. Staten Island Univ. Hosp.,* 511 F.3d 126, 131 (2d Cir.2007) ("Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." (internal quotes and cites omitted)); *Gavish v. Revlon, Inc.,* No. 00–CV–7291, 2004 WL 2210269, at *10 (S.D.N.Y. Sept. 30, 2004) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat a motion to dismiss.").

## DISCUSSION

### A. Claim Consolidation

Plaintiff initially alleges seven causes of action in the Complaint: (1) as to all Defendants, sexual harassment under Title IX; (2) as to all Defendants, retaliation under Title IX; (3) as to all Defendants, "hostile educational/work environment" under Title VII; (4) as to Defendant Robinson, sexual harassment in violation of 42 U.S.C. Section 1983 ("Section 1983"); (5) as to Defendant Forgey, retaliation in violation of Section 1983; (6) as to Defendant Robinson, intentional infliction of emotional distress ("IIED") under New York Executive Law ("NYEL") Section 50; and (7) as to Defendant Forgey, IIED under New York Executive Law Section 50. (Compl., ECF No. 8.)  Subsequently, Plaintiff voluntarily dismissed the first, second, and third causes of action as to individual Defendants Robinson and Forgey. (Pl. Opp., ECF No. 45.)

After Plaintiff's voluntary dismissal, the following claims remain: (1) as to Defendant Fordham University, (a) Title IX sexual harassment, (b) Title IX retaliation, and (c) Title VII hostile environment; (2) as to Defendant Robinson, Section 1983 sexual harassment claim and IIED; and (3) as to Defendant Forgey, Section 1983 retaliation claim and IIED. (*Id.*) The Court addresses these claims in turn.

### B. Title VII claim against Fordham University

Title VII applies to employment relationships. *See* 42 U.S.C.A. § 2000e (West) ("The term 'employee' means an individual employed by an employer [.]") Plaintiff does not allege that she was ever an employee of Defendant Fordham University. Thus, Title VII is inapplicable to the facts as alleged.

Accordingly, Plaintiff's Title VII claim against Defendant University is dismissed without prejudice.

### C. Section 1983 Claims Against Robinson and Forgey

Plaintiff alleges Defendants Robinson and Forgey "acted under color of state law by abusing [their] position[s] as Professor . . ." (Compl. ¶¶ 91, 97.) An individual acts under color of state law when the individual exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson,* 454 U.S. 312, 317–18 (1981) (internal quotation omitted); *Millar v. Ojima*, 354 F. Supp. 2d 220, 226 (E.D.N.Y. 2005). "[A] professor employed at a state university is a state actor." *Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 744 (2d Cir. 2003).

The Court takes judicial notice that Defendant Fordham University is a private university. *See Brown v. Piper*, 91 U.S. 37, 38, 23 L. Ed. 200 (1875) (holding that courts may take judicial notice of universally recognized facts). Since Defendant University is not a state university, Defendants Robinson and Forgey were not state employees. Further, Plaintiff makes no factual allegations beyond the Complaint's conclusory assertions as to how any of the Defendants was "clothed with the authority of state law." *Cf. Millar* 354 F. Supp. 2d at 226. Since Section 1983 applies only to state actors, *see Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus. Dev.* Agency, 77 F.3d 26, 29–30 (2d Cir.1996), and Plaintiff fails to allege that any of the Defendants were state actors, Section 1983 is inapplicable.

Accordingly, Plaintiff's Section 1983 claims against Defendants Robinson and Forgey are dismissed without prejudice.

### D. IIED Claims Against Robinson and Forgey

Presently, as to Defendants Robinson and Forgey, only the IIED claims remain. After due consideration, this Court retains jurisdiction over Plaintiff's IIED claims. The Court, however,

agrees that the IIED claim was insufficiently pled as to both Defendant Forgey and Defendant Robinson.

This Court's exercise of supplemental jurisdiction over the state law IIED claims is governed by 28 U.S.C. § 1367, which provides: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (2006). Claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (internal citation omitted).

Here, Defendants Robinson and Forgey's alleged conducts are the nucleus of operative fact from which Plaintiff's federal claims derive, and thus satisfy Section 1367(a). Additionally, declining jurisdiction in the instant case does not promote any of "the [four] values articulated in [*United Mine Workers of America v.*] *Gibbs*, [383 U.S. 715, 726 (1966)]: economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir.2004) ("where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote [economy, convenience, fairness, and comity]"). Thus, the Court considers it appropriate to exercise jurisdiction over Plaintiff's IIED claims.

Under New York law, a plaintiff must sufficiently plead the following elements for IIED: "[1] extreme and outrageous conduct, [2] an intent to cause—or disregard of substantial probability of causing—severe emotional distress, [3] a causal connection between the conduct and the injury, and [4] the resultant severe emotional distress." *Allam v. Meyers*, No. 09 CIV. 10580 KMW, 2011 WL 721648, at *6 (S.D.N.Y. Feb. 24, 2011) (citing *Lau v. S & M Enters.*, 898 N.Y.S.2d 42, 43,

898 N.Y.S.2d 42 (1st Dep't 2010)). New York law "highly disfavor[s]" IIED as a tort and sets "a high threshold for conduct that is extreme and outrageous enough to constitute" IIED. *Reyes v. Fairfield Properties,* 661 F.Supp.2d 249, 270 (E.D.N.Y.2009) (quotation omitted); *Hallgren v. Bell Atlantic Corp.,* No. 99 Civ. 11937, 2000 WL 726496, at *3 (S.D.N.Y. May 30, 2000).

To establish the first element, the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir.1985) (quoting *Fischer v. Maloney,* 43 N.Y.2d 553 (1978)); *Reyes,* 661 F.Supp.2d at 270. *See also* Restatement (Second) of Torts § 46, cmt. d ("[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").

With respect to Defendant Forgey, her alleged conducts—namely, refusing to grant Plaintiff time extension and subsequently failing Plaintiff with a grade of "F"—fall far short of the IIED threshold. Regardless of Defendant Forgey's motive, failing a troubled student without granting academic accommodation is not "utterly intolerable in a civilized society." *Martin*, 762 F.2d at 220; *see also, e.g., Mariani v. Consol. Edison Co. of New York*, 982 F. Supp. 267, 278 (S.D.N.Y. 1997), *aff'd sub nom. Mariani v. Consol. Edison Co.*, 172 F.3d 38 (2d Cir. 1998) (medically disabled plaintiff berated, humiliated, and fired; IIED claim dismissed); *Angel v. Levittown Union Free School Dist. No.* 5, 171 A.D.2d 770, 772–73 (2d Dep't 1991) (in circulated memoranda, plaintiff was called a thief and his work and character criticized; IIED claim dismissed); *Misek–Falkoff v.* Keller, 153 A.D.2d 841, 841–42 (2d Dep't 1989) (e-mail circulated saying plaintiff needed "psychiatric treatment" and was like "an emotionally disturbed child"; IIED claim dismissed). Because the allegation is clearly insufficient to meet the IIED pleading standard, the IIED claim against Defendant Forgey is dismissed without prejudice.

Plaintiff's IIED claim against Defendant Robinson also fails to pass muster. Construed in the light most favorable to Plaintiff, the incident constituted Plaintiff witnessing Defendant Robinson "masturbating . . .from above his waist . . . for a period of 1.5 minutes" through her laptop screen, while simultaneously recording Defendant's conduct with her cellphone. (Compl. ¶ 24.) These allegations, while disturbing, are insufficient to establish (1) extreme and outrageous conduct, and (2) resultant emotional distress "so severe that no reasonable [person] could be expected to endure it." *Wiener v. Unumprovident Corp.*, 202 F.Supp.2d 116, 122 (S.D.N.Y.2002).

The instant incident is readily distinguishable from the "rare instances" where sexual misconduct IIED claims were held actionable under New York law. *See, e.g.*, *Chau v. Donovan*, 357 F. Supp. 3d 276, 288 (S.D.N.Y. 2019) (IIED claims sufficiently pled with alleged persistent, frequent sexual texting over a period of several months after physical sexual assault); *Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F.Supp.2d 506, 529 (S.D.N.Y. 2000) ("[The rarely successful IIED] claims have alleged not merely sexual harassment, but more significantly, battery . . .") (internal quotation marks and citation omitted). Here, Plaintiffs merely alleged a discrete, remote occurrence with no threat of bodily contact looming.  In addition, unlike the *Chau* defendant who followed up with his physical battery with a pattern of sexual harassment through persistent texting, Plaintiff only alleged one email from Defendant Robinson asking "how [Plaintiff] was feeling" (Compl. ¶ 35) before Defendant University suspended Defendant Robinson and placed him under a no-contact directive, an effective protective measure of which Plaintiff was notified within four days of the incident. (Compl. ¶ 37.)

The allegations also do not amount to the requisite severity of distress, and Plaintiff further fails to plead causation. Plaintiff's allegations on both of these two elements are conclusory. *Cf. Chau v. Donovan*, 357 F. Supp. 3d at 288–89 (Plaintiff "saw a therapist, psychiatrist, and

counselor, . . . called a rape crisis hotline to seek help . . . [and] was diagnosed as suffering from post-traumatic stress disorder and depression."). It can be inferred from the Complaint that Plaintiff was troubled after witnessing the incident, and that Plaintiff immediately sought to report Defendant Robinson's behavior. However, the Complaint contains no factual allegations establishing that Plaintiff suffered a level of emotional distress "so severe that no reasonable [person] could be expected to endure it" due to her witnessing of the incident. *Wiener v. Unumprovident Corp.*, 202 F.Supp.2d at 122. As such, the Complaint fails to state an IIED claim as to Defendant Robinson.

Accordingly, the Court dismisses the IIED claims against Defendant Forgey and Defendant Robinson without prejudice.

### E.  Title IX sexual harassment claim against Fordham University

Title IX provides that, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has recognized an implied private right of action under Title IX. *See Cannon v. University of Chicago,* 441 U.S. 677, 691 (1979). "Discrimination" for purposes of Title IX liability encompasses teacher-on-student hostile educational environment sexual harassment. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992) (holding that teacher's sexual harassment of student constitutes "discrimination" on the basis of sex).

Under Title IX, to recover against an institution, a plaintiff must demonstrate: "(1) defendant is a Title IX funding recipient; (2) an appropriate person has actual knowledge of the discrimination or harassment the plaintiff alleges occurred; (3) the funding recipient has acted with deliberate indifference to known acts of harassment; and (4) the discrimination is so severe,

pervasive and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *McGrath v. Dominican Coll. of Blauvelt, New York*, 672 F. Supp. 2d 477, 486–87 (S.D.N.Y. 2009) (citing *Williams v. Bd. of Regents of the Univ. Sys. of Georgia,* 477 F.3d 1282, 1293 (11th Cir.2007)).

An institutional defendant acts with deliberate indifference for Title IX purposes "when the defendant's response to known discrimination is *clearly unreasonable* in light of the known circumstances." *Roskin-Frazee v. Columbia Univ.*, 474 F. Supp. 3d 618, 623–24 (S.D.N.Y. 2019) (citing *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999)) (emphasis added). On a motion to dismiss, courts may determine, as a matter of law, whether the institution's "response alleged was not clearly unreasonable." *Roskin-Frazee*, 474 F. Supp. 3d at 624 (citing *Davis*, 526 U.S. at 649.)

In the instant case, Plaintiff's allegations fail to show that Defendant University acted with deliberate indifference. Quite the contrary, the Complaint evinces a timely and reasonable response by Defendant University upon Plaintiff's report of the incident. Specifically, Defendant University (1) promptly suspended Defendant Robinson without pay and placed him under a no-contact directive with Plaintiff; (2) conducted an investigation, including multiple interviews of Defendant Robinson, Defendant Forgey, and other students and faculty; and (3) as a result of the investigation, terminated Defendant Robinson. As a matter of law, these actions are not clearly unreasonable, and exhibit no deliberate indifference.

Accordingly, Plaintiff's Title IX sexual harassment claim against Defendant University is dismissed without prejudice.

### F. Title IX retaliation claim against Fordham University

"[R]etaliation against individuals because they complain of sex discrimination is 'intentional conduct that violates the clear terms of [Title IX].'" *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 183 (2005) (quoting *Davis,* 526 U.S. at 642). "As in the context of Title VII, a plaintiff claiming retaliation under Title IX must . . . establish: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011) (citing *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998)). "Close temporal proximity between the plaintiff's protected activity and the . . . adverse action may in itself by sufficient to establish the requisite causal connection." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

Plaintiff vaguely characterizes all events subsequent to the incident as Defendant University's "mistreatment of Plaintiff [that] commenced with [D]efendant Robinson's misconduct." (Pl. Opp. at 15.) Upon a close review of the allegations, the Court is of the view that these alleged actions by Defendant University's employees are more appropriately divided into two categories: first, the institutional response to the Zoom incident, which includes Albanese's communications with Plaintiff and Peat's investigation; and second, Defendant Forgey's issuance of the F grade, and McPhee and White-Ryan's handling of Plaintiff's grade appeal. Except for CPS's premonitory warning to Plaintiff that "there will be negative consequences to you from the university if you tell" (Compl. ¶ 29b), Defendant University's alleged conducts in the first category constitute a reasonable response to the incident.

The same cannot be said of the second category of conducts. Construing the allegations in the light most favorable to Plaintiff, upon her reporting of the incident, a protected activity,

Defendant Forgey refused to grant her a time extension, despite the request by Albanese on behalf of Plaintiff, and issued her a failing grade. During Plaintiff's subsequent grade appeal process, McPhee and White-Ryan was unduly reproachful of Plaintiff and withheld course availability information, which prevented Plaintiff from retaking Defendant Forgey's SWL course during the summer 2021 session and further delayed Plaintiff's graduation. Defendant Forgey's refusal, the failing grade, as well as McPhee and White-Ryan's alleged withholding of information all qualify as adverse school-related action. Plaintiff also sufficiently alleged Defendant Forgey's knowledge of Plaintiff's reporting of the incident; White-Ryan's knowledge of Plaintiff's reporting can be inferred from her alleged statement during her interview in January 2021.[4] The causation prong at this pleading stage is satisfied by the close temporal proximity between Plaintiff's reporting of the incident and the subsequent adverse actions. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d at 552.

As such, Plaintiff sufficiently pled retaliation by Defendant University in violation of Title IX. Accordingly, Defendant University's motion to dismiss the retaliation claim is denied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part, DENIES in part Defendants' motions to dismiss. (ECF Nos. 48, 51.) Specifically, the Court dismisses the following claims without prejudice: (1) Title IX sexual harassment against Defendant Fordham University; (2) Title VII hostile environment against Defendant Fordham University; (3) IIED against Defendant Robinson; (4) Section 1983 against Defendant Robinson; (5) IIED against Defendant Forgey; (6)

---

[4] According to the Complaint, in January 2021, White-Ryan stated, during an interview with the Title IX office, that "Plaintiff's complaint about Defendant Forgey caused [White-Ryan] to have 'grave concerns' about Plaintiff's fitness to be a social worker because [White-Ryan] considered Plaintiff to be blaming someone else instead of being accountable for herself." (Compl. ¶ 67.)

17

Section 1983 against Defendant Forgey. Defendant Fordham University's motion to dismiss the Title IX retaliation claim is DENIED.

      Plaintiff shall have until October 28, 2022 to file an amended complaint. The Defendants shall have twenty-one days thereafter to file an answer of a responsive pleading. In the event Plaintiff fails to timely file an amended complaint, the original complaint shall remain the operative complaint and those claims dismissed without prejudice shall be deemed dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 48 and 51.

Dated:   September 28, 2022                                           SO ORDERED:
           White Plains, New York

                                                                NELSON S. ROMÁN
                                                         United States District Judge